UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. 2:09-CR-117 |
| | ) | |
| | ) | |
| CHARLES TYRONE WARREN, | ) | |
| Petitioner. | ) | |

**MEMORANDUM AND ORDER**

This criminal case is before the Court on the motion of defendant for a reduction of sentence, [Doc. 314], and supplements thereto. Defendant requests a reduction in sentence pursuant to Amendments 782 and 788 to the United States Sentencing Guidelines. The United States has responded and acknowledges the defendant is eligible for a reduction in sentence but defers to the Court's discretion whether and to what extent to reduce defendant's sentence, [Doc. 317]. The motion will be GRANTED in part.

The defendant was convicted of conspiracy to distribute and possess with intent to distribute at least 50 grams of cocaine base ("crack") in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A). He was held accountable for 500 grams of crack cocaine, resulting in a base offense level of 34. After a four-level role enhancement, the base offense level was decreased by three levels pursuant to USSG § 3E1.1(a) & (b) (acceptance of responsibility), resulting in a total offense level of 33. His criminal history category was IV. The guidelines range was 235 to 293 months; however, it was restricted by the 240-month mandatory minimum.

An Addendum to the PSR set forth the range according to Amendment 750. Thus, the base offense was a level 32. With the same adjustments, the guidelines range became 188 to 235 months, restricted by the 240-month mandatory minimum. The United States filed a motion for

1

downward departure pursuant to 18 U.S.C. § 3553(e) and USSG § 5K1.1. The government recommended a five-level reduction. The Court granted the motion and imposed a 135-month sentence of imprisonment, a 44 percent reduction.

At the time of the entry of his guilty plea, the defendant stipulated to the following facts:

> From about the summer of 2007 until November 2, 2009, Charles Tyrone Warren, also known as CJ, also known as Cowboy, did conspire with others including Robecca Nicole Hawk, Misty Cutshaw, Jabri Daniels, also known as Bri, Eugene Downs, Robert O. McKinney, also known as Dinero, Phillip Green, also known as Flip, and others, to distribute cocaine base ("crack") within the Eastern District of Tennessee. Warren would deliver cocaine base ("crack") to various co-conspirators for resale. Usually, the cocaine base ("crack") would be fronted or Warren would allow the individuals, including those named above, to take the cocaine base ("crack"), resell it, and then pay Warren any remaining balance for the cocaine base ("crack"). During the conspiracy, Warren would provide cocaine base ("crack") usually in one-ounce quantities to Jabri Daniels to resell and also would utilize Daniels to deliver cocaine base ("crack") to others including Phillip Green and Misty Cutshaw, for resale. In October of 2009, Robert O. McKinney, also known as Dinero, entered the conspiracy and began delivering cocaine base ("crack") and picking up money for Warren.
>
> Early in the conspiracy, Warren was living with Robecca Nicole Hawk and they were selling cocaine base ("crack") from Hawk's residence located at 114 Willis Road, in Newport, Tennessee. On August 2, 2007, Agents of the Fourth Judicial District Drug Task Force went to the residence of Hawk and Warren to purchase $200 in cocaine base ("crack"). A confidential informant (hereinafter CI), which was outfitted with an electronic recording device to record the transaction, went to the residence to talk to Robecca Hawk about purchasing $200 worth of cocaine base ("crack"). After talking to Hawk about the purchase, the CI handed Hawk $200 in cash. CJ Warren then came in from another room and handed the CI several rocks of cocaine base ("crack").
>
> On August 18, 2009, Warren fronted two ounces of cocaine base ("crack") to a CI. The CI was to pay Warren $2,800 for the cocaine base ("crack"), as well as $300 for a previous purchase. The CI, at the direction of Mack Smith, Director of Fourth Judicial District Drug Task Force, and others made several phone calls to CJ Warren to confirm the debt and to arrange meetings to make the payment. On August 20, 2009, under the surveillance of agents of the Fourth Judicial District Drug Task Force, the CI wore a

recording device and met with CJ Warren and Jabri Daniels and paid $500 towards the drug debt at Waffle House in Newport, Tennessee.

On August 29, 2009, another payment was arranged with Warren over the telephone by the CI. The phone call was recorded and surveillance was initiated by the Fourth Judicial District Drug Task Force and the Federal Bureau of Investigation for the delivery of $1,000 to Warren as payment for two ounces of cocaine base ("crack"). The thousand dollars for the previous purchase was paid to Warren at Taco Bell in Knoxville under the surveillance of agents. After making the payment to Warren, Warren provided the CI with approximately three more ounces of cocaine base ("crack"). This was later turned over to agents of the Fourth Judicial District Drug Task Force and FBI. The cocaine base ("crack") provided to the CI on August 29, 2009 was examined by the Tennessee Bureau of Investigation Crime Lab and was confirmed to be 65.7 grams of cocaine base ("crack").

On September 29, 2009, a CI acting under the direction of the Fourth Judicial District Drug Task Force and the FBI made numerous phone calls to Warren to arrange the purchase and delivery of one ounce of cocaine base ("crack"). The cocaine base ("crack") was arranged to be delivered by Jabri Daniels and Misty Cutshaw. After several phone calls between Warren, Daniels, and Cutshaw, Daniels and Cutshaw did deliver the cocaine base ("crack") to the CI at the Time Out gas station in Newport, Tennessee. The cocaine base ("crack") provided to the CI on September 29, 2009 by CJ Warren and delivered by Daniels and Cutshaw was confirmed by the Tennessee Bureau of Investigation Crime Lab to be 21.3 grams of cocaine base ("crack").

Warren continued to be involved in the conspiracy to distribute cocaine base ("crack") to other co-conspirators until the execution of a federal search warrant at his residence on November 23, 2009. On that date, a federal search warrant was executed at 5935 Apple Drive, Knoxville, Tennessee, which was the residence of Warren and Lasindra Brabson. During the execution of the search warrant, 136.9 grams of what the Tennessee Bureau of Investigation confirmed to be cocaine was seized from the residence. At the time of the execution of the search warrant, Lasindra Brabson was at the residence and was subsequently interviewed. Brabson confirmed that the cocaine in the residence belonged to Warren and that Warren had previously been converting cocaine into cocaine base ("crack") for resale.

The parties agree that the amount of cocaine base ("crack") distributed by Warren during the course of this conspiracy was at least 500 grams of cocaine base, but less than 1.5 kilograms of cocaine base ("crack").

3

[Doc. 86].

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 131 S. Ct. 2685, 2690 (2011) (internal citation and quotation marks omitted). Title 18 United States Code § 3582(c)(2), however, gives a district court authority to modify a term of imprisonment that has been imposed on a defendant "who has been sentenced to a term of imprisonment based on a sentencing range that has been subsequently lowered by the Sentencing Commission," 18 U.S.C. § 3582(c), through a retroactively applicable amendment such as Amendment 782. *Id.*; USSG § 1B1.10. The Court may reduce the term, "after considering the factors set forth in § 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). Section 1B1.10 identifies the guideline amendments that may be applied retroactively, and sets out the factors for deciding a sentence reduction motion under § 3582(c). The Supreme Court has made clear that § 3582 does not require a sentencing or resentencing proceeding, but gives courts the power to reduce an otherwise final sentence under circumstances established by the Sentencing Commission. *Dillon v. United States*, 560 U.S. 817 (2010); *United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010); USSG § 1B1.10, Cmt. background (noting that a reduction under § 1B1.10 is discretionary and "does not entitle a defendant to a reduced term of imprisonment as a matter of right").

Section 3582(c)(2) establishes a two-step inquiry: First, the court must determine whether the defendant is eligible for a sentence reduction. If she is, the court must then consider whether, in its discretion, the authorized reduction is warranted in whole or in part under the circumstances. *Dillon*, 130 S. Ct. at 2691-92; *United States v. Greenwood*, 521 Fed. App'x 544, 547 (6th Cir.

2013). In exercising its discretion, the court is required to consider public safety factors and is permitted to consider post-sentencing conduct in deciding whether a reduction in the defendant's term of imprisonment is warranted. USSG § 1B1.10, Cmt. (n. 1(B)(ii)-(iii)). Thus, the district court is required to consider both the § 3553(a) factors and "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in defendant's term of imprisonment." *Curry*, 606 F.3d at 330 (quoting USSG § 1B1.10, Cmt. n. 1(B)(ii)).

One other factor is relevant to the instant motion. Ordinarily, a defendant's sentence may not be reduced to a term "less than the minimum of the amended guideline range." USSG § 1B1.10(b)(2)(A). But where, as here, defendant previously received a below-guideline sentence "pursuant to a government motion to reflect the defendant's substantial assistance to authorities," the Court has authority to grant a reduction "comparably less than the amended guideline range." USSG § 1B1.10(b)(2)(B). In addition, where, as is the case here, the defendant obtained a downward departure pursuant to 18 U.S.C. § 3553(e), "the amended guideline range shall be determined without regard to the operation of § 5G1.1 . . . and § 5G1.2." USSG § 1B1.10(c).

The relevant factors here demonstrate that a reduction is appropriate but that the reduction should be less than that requested by defendant. First is the seriousness of defendant's criminal conduct. Crack cocaine is a dangerous drug. The defendant not only sold the crack but he also organized and led others to sell the drug. In addition, the defendant's criminal history is an important consideration. The defendant has been previously convicted for distributing drugs.

Protection of the public and necessary general deterrence are also significant factors which weigh against the reduction sought here, given the seriousness of the criminal conduct and the amount of crack involved in the offense. One final factor also weighs against the full reduction sought by defendant. That is the one pointed out by the government response in this matter. The

5

defendant faced a congressionally imposed 240-month mandatory minimum term of imprisonment as a result of his conviction. The only reason he escaped that 240-month minimum term, then or now, was the government's motion for downward departure based on substantial assistance. At the time of sentencing, the clear rule in the Sixth Circuit was that "only factors relating to a defendant's cooperation may influence the extent of a departure pursuant to § 3553(e)." *United States v. Grant*, 636 F.3d 803, 814 (6th Cir. 2011) (*en banc*). This Court reviewed the government's motion outlining the assistance provided by the defendant and concluded at the time that the sentence imposed reflected the extent of her cooperation. The policy bases upon which the Sixth Circuit premised its holding remains the same, even though the defendant is now *eligible* for the reduction based on the amendment to the guidelines. Since the only way defendant escaped the congressionally imposed mandatory minimum was for substantial assistance to the government, it is perfectly logical that the extent of the reduction should be determined based on the extent of assistance.

As the government points out, a reduction to the level sought by the defendant would result in a 65 percent reduction from the mandatory minimum. Such a reduction is not warranted here under the circumstances outlined above. The Court will, however, in the exercise of its discretion, in light of the defendant's disciplinary history during his incarceration and his post-sentencing efforts at rehabilitation, including participation in drug treatment programs, grant some additional reduction in the case. Therefore, the defendant's motion is GRANTED in part, and his sentence will be reduced to a term of 110 months of imprisonment.

This order is effective November 13, 2015.

ENTER:

                                                  s/J. RONNIE GREER
                                                  UNITED STATES DISTRICT JUDGE